```
 1  LAWRENCE G. BROWN
    Acting United States Attorney
 2  BENJAMIN B. WAGNER
    SEAN C. FLYNN
 3  Assistant U.S. Attorneys
    501 "I" Street, Suite 10-100
 4  Sacramento, California 95814
    Telephone: (916) 554-2700
 5
```



**FILED**

JAN 27 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. CR S 09-0035-LKK |
| ) | |
| v. ) | |
| ) | PLEA AGREEMENT |
| ROBERT WATSON, ) | |
| ) | |
| Defendant. ) | |

## I.

### INTRODUCTION

**A. Scope of Agreement:** The Information to be filed in this case charges the defendant, Robert Watson ("Watson"), with two counts of honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

1

1  **B. Court Not a Party:** The Court is not a party to this plea
2  agreement. Sentencing is a matter solely within the discretion of
3  the Court, the Court is under no obligation to accept any
4  recommendations made by the government, and the Court may in its
5  discretion impose any sentence it deems appropriate up to and
6  including the statutory maximum stated in this plea agreement. If
7  the Court should impose any sentence up to the maximum established
8  by the statute, the defendant cannot, for that reason alone,
9  withdraw his guilty plea, and he will remain bound to fulfill all of
10 the obligations under this plea agreement. The defendant
11 understands that neither the prosecutor, defense counsel, nor the
12 Court can make a binding prediction or promise regarding the
13 sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Waiver of Indictment and Venue:** The defendant will waive indictment by grand jury, waive venue in the Northern District of Illinois, and agree to proceed in the Eastern District of California. He consents to the filing of a two-count Information, substantially in the form attached hereto as <u>Exhibit B</u>, charging him with honest services mail fraud (2 counts) in violation of 18 U.S.C. §§ 1341 and 1346.

**B. Guilty Plea:** The defendant will plead guilty to the Information charging him with two counts of honest services mail fraud. The defendant agrees that he is in fact guilty of those charges and that the facts set forth in the Factual Basis attached hereto as <u>Exhibit A</u> are true and accurate.

**C. Restitution:** The Mandatory Victim Restitution Act requires

2

the Court to order restitution to the victims of certain offenses. If such restitution is ordered, payment should be by cashier's or certified check made payable to the Clerk of the Court. Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**D. Special Assessment:** The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.

## III.

### THE GOVERNMENT'S OBLIGATIONS

**A. Incarceration Range:** The government will recommend that the defendant be sentenced to the mid-point of the applicable guideline range for his offense as determined by the United States Probation Office.

**B. Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer and the Court, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G. § 3C1.1, either in the preparation of the pre-sentence report or

during the sentencing proceeding.

## IV.

### ELEMENTS OF THE OFFENSE

With respect to Counts One and Two of the Information to be filed in this matter, which charge the defendant with honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, at trial the government would have to prove beyond a reasonable doubt the following elements:

First, that the defendant knowingly made up a material scheme or plan to deprive his employer Kraft Foods, Inc. of its intangible right to the defendant's honest services;

Second, the defendant acted with the intent to deprive Kraft Foods, Inc. of its intangible right to the defendant's honest services; and

Third, the defendant used, or caused to someone to use, the mails to carry out or to attempt to carry out the scheme or plan.

## V.

### MAXIMUM SENTENCE

**A. Maximum Penalty:** With respect to Counts One and Two of the Information to be filed in this matter charging violations of 18 U.S.C. §§ 1341 and 1346, the maximum sentence that the Court can impose is twenty years of incarceration, a fine of $250,000, a three-year period of supervised release, and a special assessment of $100 on each count.

**B. Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up

4

to three additional years of imprisonment.

## VI.

### SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220, 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B. Stipulations Affecting Guidelines Calculations:** The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate and agree to the following:

**1. Base Offense Level:** The defendant's base offense level is eight pursuant to U.S.S.G. § 2B4.1.

2. **Specific Offense Characteristics:** Pursuant to U.S.S.G. §§ 2B4.1(b)(1) and 2B1.1(b)(1), the parties agree that at an evidentiary hearing the government is currently in a position to prove that the amount of loss attributable to the honest services mail fraud committed by the defendant, and relevant conduct, is greater than $120,000, but less than $200,000. Consequently, the base offense level is increased by ten.

3. **Abuse of Trust:** The parties stipulate and agree that in committing the conduct alleged in Counts One and Two of the Information to be filed in this matter defendant abused a position of public or private trust. Consequently, there is a two level enhancement pursuant to U.S.S.G. § 3B1.3.

4. **Acceptance of Responsibility:** See paragraph III.B above.

5. **Total Offense Level:** Pursuant to the foregoing stipulations, and assuming the defendant accepts responsibility for his conduct under U.S.S.G. § 3E1.1, the defendant's total adjusted offense level is seventeen.

6. **Criminal History:** The parties agree that the defendant's criminal history is to be determined by United States Probation.

7. **Departures or Other Enhancements or Reductions:** The parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments or cross-references, other than those contemplated in the foregoing stipulations. Both parties stipulate and agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing

6

Guidelines under <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2005). If either party breaches this provision, the other party shall be relieved of all of its obligations under this plea agreement.

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence is no longer than the top of the Sentencing Guidelines range determined by the Court consistent with the stipulations set forth above about the Sentencing Guidelines variables.

Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

If the defendant ever attempts to vacate his plea, dismiss the

underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United

8

States.

## IX.

## APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: _1-27-09_  _____
THOMAS ORGAN
Attorney for Defendant

**B. Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: _1-22-09_  _____
ROBERT WATSON, Defendant

/ / / /
/ / / /
/ / / /

9

1      **C.  Attorney for United States:**  I accept and agree to this
2   Plea Agreement on behalf of the government.
3
4   DATED: *January 27, 2009*          LAWRENCE G. BROWN
                                        Acting United States Attorney
5
6
                                        By: /s/ Sean C. Flynn
7                                          BENJAMIN B. WAGNER
                                           SEAN C. FLYNN
8                                          Assistant U.S. Attorneys

# EXHIBIT "A"
## Factual Basis for Plea

At trial, the government would prove the following facts beyond a reasonable doubt:

From at least January 2004 until April 2008, defendant Robert Watson ("Watson") served as Purchasing Manager for Kraft Foods, Inc. ("Kraft"), a multinational food company with a principal place of business and headquarters in Northfield, Illinois. In that capacity, Watson was vested with authority to negotiate and enter into contracts, with the approval of his employer, for the purchase of tomato-based products and other food products from various processors. In the normal course, Kraft Foods and Watson received bids for the sale of tomato-based products from processors to Kraft by way of what was intended to be a secret and competitive bidding process. In performing these functions, Watson owed Kraft Foods a duty of honest services.

One company which routinely sold processed tomato products and other food products to Kraft was SK Foods, L.P., a limited partnership with principal places of business in Monterey, California, and in Williams, Ripon and Lemoore, California, in the Eastern District of California. SK Foods, L.P. and its related corporate entities ("SK Foods") is a grower and processor of tomato products and other food products, for sale to food product manufacturers, food service distributors and marketers, and retail outlets. In negotiating and entering into contracts between Kraft and SK Foods, Watson routinely dealt with Randall Rahal, a supervisor and Director of SK Foods, who also served as an SK Foods sales broker through his New Jersey-based food service company Intramark USA, Inc. ("Intramark").

As part of a scheme to defraud Kraft of its right to Watson's honest services, beginning in 2004 Watson began receiving personal bribe payments from Rahal, on behalf of SK Foods. Between January 2004 and April 2008, Rahal paid Watson approximately $158,000 in bribes on behalf of SK Foods. In return for the bribes, Watson agreed to, and did, ensure that Kraft Foods purchased processed tomato products and other products from SK Foods rather than from certain of SK Foods' competitors. In addition, in return for the bribes, Watson provided SK Foods with information that allowed SK Foods to sell processed tomato products to Kraft at inflated prices. Rahal's bribe payments to Watson were made with the knowledge and encouragement of other leaders and employees at SK Foods.

One such payment occurred on or about January 19, 2006. On that date, Watson accepted from Rahal a check in the amount of $10,000, which was drawn on Intramark's Sun National Bank account number XXXXXX5624. Watson received the check in Wheeling, Illinois, via United States mail. On July 25, 2007, Watson subsequently accepted from Rahal a second check in the amount of $17,252.78, which was drawn on Intramark's Sun National Bank account number XXXXXX5624. Watson received the check in Wheeling, Illinois, via United States mail.

In return for Rahal and SK Foods' personal bribery payments, between 2004 and 2008 Watson ensured that SK Foods secured contracts with Kraft for the sale of approximately 230 million pounds of tomato product at elevated prices, causing a substantial loss to Kraft.

Watson, Rahal and SK Foods' actions were in direct contravention of the conflict of interest policies set forth in the Kraft Foods Code of Conduct for Compliance and Integrity, and were intended to, and did deprive Kraft of its right to Watson's honest services. Such conduct violated 18 U.S.C. §§ 1341 and 1346, and 720 ILL. COMP. STAT. 5/29A-2 (2008).